UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

DEMARIO HILL,

    Plaintiff,

v.

BRIAN EDWARDS, HAWK GRIER,
and THE CITY OF DETROIT,

    Defendants.

No. 2:25-cv-10245

Hon.

_____/

OLIVER BELL GROUP
Paul Matouka (P84874)
50 W. Big Beaver Rd.
Suite 200
Troy, MI 48084
(248) 327-6556
notifications@oliverlawgroup.com
_____/

**COMPLAINT AND JURY DEMAND**

NOW COMES Plaintiff DeMario Hill, by and through his attorneys, Oliver Bell Group, and for his Complaint alleges the following:

**Introduction**

1. The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures.

2. If the Fourth Amendment means anything, it prohibits police officers from tackling a young man walking peacefully down his own street absent probable cause or reasonable suspicion.

1

3. Yet that is what occurred in this case, a result of the individual Defendants implementing the unofficial custom and/or policy of Defendant City of Detroit for initiating *Terry* stops without reasonable articulable suspicion.

4. Moreover, these *Terry* stops disproportionately affect Black men, violating the Equal Protection Clause of the Fourteenth Amendment.

## PARTIES

5. Plaintiff DeMario Hill is a resident of Wayne County Michigan.

6. Defendant Hawk Grier is a resident of Wayne County Michigan and was, at all times relevant to the allegations in this complaint, employed by Defendant City of Detroit as a police officer.

7. Defendant Brian Edwards is a resident of Michigan and was, at all times relevant to the allegations in this complaint, employed by Defendant City of Detroit as a police officer.

8. Defendant City of Detroit is a municipality in the State of Michigan and includes the Detroit Police Department ("DPD").

## JURISDICTION AND VENUE

9. This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, as Plaintiff's claims arise under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

10. This Court has supplemental jurisdiction over Plaintiff's State law claims pursuant to 28 U.S.C. § 1367 as they arise from the same transaction or occurrence and form part of the same case or controversy as Plaintiff's federal law claims.

11. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391 as all the events giving rise to the allegations in this Complaint occurred within Wayne County Michigan, in the Eastern District of Michigan.

## FACTUAL ALLEGATIONS

12. On August 30, 2023, at approximately 3:45 P.M., Mr. Hill was walking back to his home on Riopelle Street in Detroit.

13. As Mr. Hill neared his home, a marked DPD cruiser drove past before suddenly turning around and pulling up next to Mr. Hill.

14. Defendants Edwards and Grier exited the vehicle with one of them saying, "Hey nigga, you got a gun?"

15. Before Mr. Hill could respond, he was tackled to the ground.

16. Mr. Hill has never owned a gun and he did not have one on his person on this date.

17. Rather, Mr. Hill had his cell phone on him, which was thrown to the ground and broken when he was tackled by one of the Defendants.[1]

18. After realizing their glaring mistake, Defendants Grier and Edwards released Mr. Hill who walked up the steps to his home.

19. Upon information and belief, Defendants Grier and Edwards were not responding to any reported crime and were not looking for a suspect in any particular crime.

20. Mr. Hill suffered some scrapes and bruises from the interaction and significant mental and emotional injury.

21. Mr. Hill has experienced significant depression and anxiety following this incident.

22. Unfortunately, this was neither the first nor the last time that Mr. Hill had been accosted by Detroit Police Officers for no reason.

23. A few weeks prior to this incident, Mr. Hill had been stopped and questioned by DPD officers – including either Defendant Edwards or Grier – and questioned about whether he had a gun.

24. Moreover, months later, as Mr. Hill was getting off the bus to go to work, he was again accosted by DPD officers who accused him of being involved in a shooting.

---

[1] Plaintiff cannot presently identify which Defendant it was.

25. Another incident followed where Mr. Hill was stopped because he was riding his scooter late at night – Mr. Hill was working night shifts at this time – and again questioned by DPD officers.

26. Upon information and belief, traffic and *Terry* stops conducted by DPD officers disproportionately impact Black residents and visitors in Detroit.

27. Upon information and belief, DPD officers follow an unofficial custom and/or policy of initiating *Terry* stops without legitimate reasonable articulable suspicion as fishing expeditions.

28. Upon information and belief, these unjustified *Terry* stops disproportionately target Black residents and visitors in Detroit.

29. Publicly available data on citizen complaints filed against DPD officers demonstrates that a significant majority of the complaints come from people of color.[2]

---

[2] DPD Citizen Complaints, *available at* https://data.detroitmi.gov/datasets/detroitmi::dpd-citizen-complaints/about (last accessed November 11, 2024).



Fig. 1 – Citizens complaints from January 1, 2022, to present based on race of complainant.[3]

30. The population of Detroit is 77.7% Black or African American and 10.7% white.

31. 82.36% of the complaints where the race of the complainant is known come from Black complainants while only 5.37% come from white complainants.

32. The disproportionate enforcement and treatment are a result of Defendant City of Detroit's unofficial custom and/or policy of targeting people of color for enforcement.

---

[3] This chart omits the categories of "unknown" and "blank" from the dataset.

33. Moreover, only a very slim proportion of citizen complaints result in any type of discipline and, in the instances where the complaint is found to be warranted, discipline occurs years later.

34. Mr. Hill continues to live in the City of Detroit and since the incident on August 30, 2023, has had two nonconsensual encounters with DPD employees despite not being engaged in any criminal behavior.

35. Mr. Hill is likely to continue to be subjected to disproportionate enforcement based on his race absent injunctive relief directing Defendant City of Detroit to implement additional policies and procedures to eliminate racial policing and enforcement.

## COUNT I: 42 U.S.C. § 1983 – Fourth Amendment Unreasonable Search and Seizure

36. Plaintiff realleges and reincorporates the preceding paragraphs as if fully restated herein.

37. Defendants Edwards and Grier lacked probable cause and reasonable suspicion to detain Mr. Hill on August 30, 2023.

38. Mr. Hill was walking to his home in broad daylight, he had no warrants, there were no reports of any crimes being committed by someone matching his description, and he was unarmed.

39. One of the Defendants further violated Mr. Hill's right to be free from unreasonable seizure by tackling him to the ground.

40. Even if Mr. Hill had a gun – which he absolutely did not – possession of firearms is constitutionally protected by the United States Constitution and Michigan law permits residents to carry a concealed weapon with a concealed pistol license.

41. As Mr. Hill had done nothing threatening to anyone, tackling him was an application of excessive force.

42. In fact, assuming that Defendants Edwards and Grier thought they were conducting a *Terry* stop – that permits a frisk to detect concealed weapons, not an impromptu Lion's tryout.

43. The conduct of Defendants Edwards and Grier was the result of Defendant City of Detroit's unofficial custom or policy of conducting baseless *Terry* stops as fishing expeditions for criminal activity.

44. Moreover, Defendants Edwards and Grier felt secure in violating Mr. Hill as they knew that any complaint against them was unlikely to result in discipline and, if it did, that would only come years later as a slap on the wrist.

45. This belief is a result of Defendant City of Detroit's custom and/or policy of failing to properly investigate citizen complaints and issue appropriate discipline.

## COUNT II: 42 U.S.C. § 1983 – Fourteenth Amendment Equal Protection Clause

46. Plaintiff realleges and reincorporates the preceding paragraphs as if fully restated herein.

47. As Defendants lacked both probable cause and reasonable suspicion, the only basis for Defendants Grier and Edwards to detain and tackle Mr. Hill was that he was a young Black male.

48. Mr. Hill was targeted because the unofficial custom and/or policy of Defendant City of Detroit is to single out Black residents and visitors for enforcement actions.

49. Moreover, Defendants Edwards and Grier felt secure in violating Mr. Hill as they knew that any complaint against them was unlikely to result in discipline and, if it did, that would only come years later as a slap on the wrist.

50. This belief is a result of Defendant City of Detroit's custom and/or policy of failing to properly investigate citizen complaints and issue appropriate discipline.

## COUNT III: State Law – Elliot-Larsen Civil Rights Act

51. Plaintiff realleges and reincorporates the preceding paragraphs as if fully restated herein.

52. As Defendants lacked both probable cause and reasonable suspicion, the only basis for Defendants Grier and Edwards to detain and tackle Mr. Hill was that he was a young Black male.

53. Mr. Hill was targeted because the unofficial custom and/or policy of Defendant City of Detroit is to single out Black residents and visitors for enforcement actions.

54. Moreover, Defendants Edwards and Grier felt secure in violating Mr. Hill as they knew that any complaint against them was unlikely to result in discipline and, if it did, that would only come years later as a slap on the wrist.

55. This belief is a result of Defendant City of Detroit's custom and/or policy of failing to properly investigate citizen complaints and issue appropriate discipline.

WHEREFORE, Plaintiff respectfully requests that this Court find that Defendants violated his rights in the manner set forth above and award him:

a. Nominal, compensatory, and punitive damages;

b. Injunctive relief directing Defendant City of Detroit to implement new policies, training, and/or enforce existing policies to prevent racial discrimination and unconstitutional searches and seizures in their enforcement;

c. Reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

   d. Any other relief this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by Jury.

                                                            Respectfully Submitted,

                                                            **OLIVER BELL GROUP**

Dated: <u>January 27, 2025</u>        <u>/s/ Paul Matouka</u>
                                                        Paul Matouka (P84874)
                                                        Oliver Bell Group
                                                        Attorneys for Plaintiff
                                                        50 W. Big Beaver Rd., Suite. 200
                                                       Troy, MI 48084
                                                        notifications@oliverlawgroup.com